UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

---

IN RE:
JAMES D. BOWER,
       DEBTOR.

Chapter 7
Case No. 10-10993-WCH

---

WARREN E. AGIN, CHAPTER 7 TRUSTEE,
       PLAINTIFF,

v.

MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC., AND THE
BANK OF NEW YORK MELLON, f/k/a THE
BANK OF NEW YORK AS SUCCESSOR
TRUSTEE TO JPMORGAN CHASE BANK,
N.A., AS TRUSTEE FOR THE CERTIFICATE
HOLDERS OF STRUCTURE ASSET
MORTGAGE INVESTMENT II TRUST 2006-
AR4 MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES 2006-AR4,
       DEFENDANTS.

Adversary Proceeding
No. 10-1092

---

**MEMORANDUM OF DECISION**

**I. INTRODUCTION**

      The matters before the Court are the Trustee's Motion for Partial Summary Judgment (the "Motion") filed by Warren Agin (the "Trustee"), the Chapter 7 trustee of the estate of James D. Bower (the "Debtor"), the Defendants' Opposition to Trustee's Motion for Partial Summary Judgment and Cross-Motion for Summary Judgment (the "Cross-Motion") filed by the defendants Mortgage Electronic Registration Systems, Inc. ("MERS") and The Bank of New

1

York Mellon[1] ("BNYMellon," collectively with MERS, the "Defendants"), and the Reply to Opposition to Trustee's Motion for Partial Summary Judgment on Counts III and IV (the "Reply") filed by the Trustee. On October 13, 2010, I granted the Trustee's prior motion for partial summary judgment, finding that the omission of the Debtor's name from the mortgage acknowledgment (the "Acknowledgment") rendered the mortgage currently held by BNYMellon (the "Mortgage") avoidable under 11 U.S.C. § 544(a)(3).[2] Through his present motion, the Trustee seeks recovery from the Defendants under 11 U.S.C. §§ 550(a)(1) and (2) on account of the avoided transfer. In response, the Defendants assert that MERS is not an initial transferee and that BNYMellon is a good faith transferee who gave value and accepted the Mortgage in good faith without knowledge of the Trustee's claim. For the reasons set forth below, I will grant both motions in part.

## II. BACKGROUND

The facts relevant to the present dispute are few and undisputed. On or about October 26, 2005, the Debtor, in connection with a refinancing, granted the Mortgage with respect to real property located at 240 Bradford Street, Unit 2, Provincetown, Massachusetts (the "Property") to MERS as nominee for Pride Mortgage LLP.[3] Although the Acknowledgment contained a place for the notary or justice of the peace to insert the grantor's name, the Debtor's name is absent.[4] Nevertheless, the Mortgage was recorded in Barnstable Country Registry of Deeds (the

---

[1] f/k/a The Bank of New York as Successor Trustee to JPMorgan Chase Bank, N.A., as Trustee for the Certificate holders of Structured Asset Mortgage Investments II Trust 2006–AR4 Mortgage Pass–Through Certificates, Series 2006–AR4.

[2] *See Agin v. Mortg. Elec. Registration Sys., Inc. (In re Bower)*, No. 10-1092, 2010 WL 4023396 (Bankr. D. Mass. Oct. 13, 2010).

[3] LR 56-1 Statement of Material Facts, Docket No. 97 at ¶ 5.

[4] *In re Bower*, 2010 WL 4023396 at *1.

"Registry").[5] On February 24, 2010, MERS executed an assignment of the Mortgage in favor of BNYMellon.[6]

The Debtor filed his voluntary Chapter 7 petition on February 1, 2010, and the Trustee was subsequently appointed.[7] On March 26, 2010, the Trustee filed the present adversary proceeding seeking avoidance of the Mortgage under 11 U.S.C. § 544(a)(3) and recovery under 11 U.S.C. § 550(a).[8] After the Trustee moved for summary judgment with respect to the avoidance of the Mortgage, I took the matter under advisement.[9] On October 13, 2010, I issued a Memorandum of Decision and granted the Trustee's motion.[10] Relying on Judge Feeney's decision in *In re Giroux*[11] and its subsequent affirmance by the United States District Court for the District of Massachusetts (the "District Court"),[12] I concluded that the omission of the Debtor's name from the Acknowledgment was a material defect that rendered it avoidable by the Trustee.[13]

---

[5] LR 56-1 Statement of Material Facts, Docket No. 97 at ¶ 5.

[6] *Id.* at ¶¶ 12-15. The Defendants dispute this fact "to the extent that it is an incomplete representation of the chain of transfer of the subject mortgage loan." Defendants' LR 56.1 Statement of Material Facts, Docket No. 107 at ¶ 1. According to the Declaration of Shari Middlebrooks, the HL Senior Research Specialist with JPMorgan Chase Bank, N.A., "[o]n or about June 30, 2006, the Bank entered into a Pooling and Servicing Agreement ("PSA") whereby it became the trustee for the certificateholders of Structured Asset Mortgage Investments II Trust 2006-AR4 Mortgage Pass-Through Certificate Series 2006-AR4 ("Trust"). The mortgage and note of the Bower Loan was conveyed and assigned to the Bank as trustee under the terms of the PSA as of the closing date of the Trust." Docket No. 111 at ¶ 4. For reasons set forth more fully below, I do not find the date of the transfer to be dispositive of the issue now before me.

[7] LR 56-1 Statement of Material Facts, Docket No. 97 at ¶ 11.

[8] *Id.* at ¶ 16.

[9] *Id.* at ¶ 17.

[10] *Id.* at ¶¶ 18-21.

[11] *Agin v. Mortg. Elec. Registration Sys., Inc. (In re Giroux)*, No. 08–14708, 2009 WL 1458173 (Bankr. D. Mass. May 21, 2009).

[12] *Mortg. Elec. Registration Sys., Inc. v. Agin*, No. 09–CV–10988, 2009 WL 3834002 (D. Mass. Nov. 17, 2009).

[13] *In re Bower*, 2010 WL 4023396 at *1.

3

BNYMellon filed an interlocutory appeal and an election to have the appeal heard by the District Court, but the leave was ultimately denied.[14] In the interim, the Trustee sought and obtained approval to sell the Property pursuant to 11 U.S.C. § 363.[15] As a result, he is currently holding the net proceeds of approximately $250,000 in escrow pending further order of this Court.[16]

On August 22, 2011, the Trustee filed the Motion seeking judgment as a matter of law under 11 U.S.C. §§ 550(a)(1) and (2) from MERS and BNYMellon. The Defendants filed the Cross-Motion on September 26, 2011, and the Reply followed on September 29, 2011. On September 30, 2011, I held a hearing on the cross-motions and at its conclusion, took both under advisement.

### III. POSITIONS OF THE PARTIES

####  The Trustee

Since I previously held that the Trustee may avoid the Mortgage, he contends that he may now recover a single satisfaction under 11 U.S.C. § 550 from either MERS or BNYMellon on account of the avoided Mortgage. First, relying on *Bonded Fin. Servs. v. European Am. Bank*,[17] the Trustee argues that, as the mortgagee and assignor to BNYMellon, MERS is an initial transferee under 11 U.S.C. § 550(a)(1) because it held legal title and exercised dominion and control over the Mortgage. He further asserts that it is irrelevant that MERS is identified as a "nominee" because a duly authorized signature from MERS was required to effectuate an assignment of the Mortgage. Similarly, the Trustee contends that MERS need not have held the

---

[14] LR 56-1 Statement of Material Facts, Docket No. 97 at ¶¶ 22, 26.

[15] *Id.* at ¶¶ 23-24.

[16] *Id.* at ¶ 25.

[17] *Bonded Fin. Servs. v. European Am. Bank*, 838 F.2d 890 (7th Cir. 1988).

4

promissory note that the Mortgage secured because Massachusetts law recognizes that one party may hold the mortgage while another holds the promissory note.

Next, The Trustee argues that he can recover from BNYMellon as an immediate transferee under 11 U.S.C. § 550(a)(2) because it had actual knowledge of the defect and did not act in good faith. He contends that the Acknowledgment contained a material defect on its face and a reasonable person would have been induced to investigate it further. Therefore, the Trustee asserts that I should impute knowledge of the material defect to BNYMellon because it had the facts necessary to discover it. At very least, he argues that BNYMellon lacked good faith by failing to investigate the matter.

### The Defendants

MERS argues that it was not an initial transferee because it is an entity acting merely as a conduit in the ordinary course of business. While MERS concedes that it had a legally sufficient interest to foreclose under Massachusetts law, it asserts that its interest is limited by its fiduciary duty to act on behalf of the note holder. Under the MERS rules, it states that its nominal authority may only be exercised at the direction of the note holders or their servicers.

BNYMellon contends that the Trustee cannot recover from it because it is a good faith transferee that took the Mortgage for value without knowledge of the Trustee's claim. Relying on *In re Bressman*[18] and *In re Sherman*,[19] BNYMellon argues that actual knowledge is a higher standard than mere notice of a possible defect and does not give rise to a duty to investigate. To the extent that actual notice may encompass facts which the transferee knew or should have known, BNYMellon asserts this speaks only to its good faith in the context of its routine

---

[18] *Wasserman v. Bressman (In re Bressman)*, 327 F.3d 229 (3d Cir. 2003).

[19] *Brown v. Third Nat'l Bank (In re Sherman)*, 67 F.3d 1348 (8th Cir. 1995).

5

business practices. In this light, BNYMellon states that the sole defect in the Acknowledgment is a small one, and cannot be tantamount to knowledge that the Mortgage was avoidable because no reasonable person would presume such a result. To the contrary, BNYMellon asserts that it had no knowledge of the Trustee's claim at any time prior to the commencement of this adversary proceeding.

## IV. DISCUSSION

### 1. The Summary Judgment Standard

Pursuant to Fed. R. Civ. P. 56, "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[20] "A 'genuine' issue is one supported by such evidence that 'a reasonable jury, drawing favorable inferences,' could resolve it in favor of the nonmoving party."[21] Material facts are those having the potential to affect the outcome of the suit under the applicable law.[22] The absence of a material factual dispute is a "condition necessary," but not a "condition sufficient" to summary judgment.[23]

The party seeking summary judgment "always bears the initial responsibility . . . of identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which demonstrate the absence of a genuine issue of material fact."[24] The nonmoving party must then "produce 'specific facts, in

---

[20] Fed. R. Civ. P. 56(a) made applicable in adversary proceedings by Fed. R. Bankr. P. 7056.

[21] *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (*quoting Smith v. F.W. Morse & Co., Inc.*, 76 F.3d 413, 427 (1st Cir. 1996)).

[22] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 314-315 (1st Cir. 1995); *Nereida-Gonzalez v. Tirado-Delgado*, 990 F.2d 701, 703 (1st Cir. 1993).

[23] *Desmond v. Varrasso (In re Varrasso)*, 37 F.3d 760, 764 (1st Cir.1994).

[24] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248.

suitable evidentiary form, to . . . establish the presence of a trialworthy issue.'"[25] A trialworthy issue cannot be established by "conclusory allegations, improbable inferences, and unsupported speculation."[26] The court must view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor.[27] Therefore, when deciding cross-motions for summary judgment, the court must consider each motion separately.[28]

### 2. Count III – Liability for Avoided Transfer Against MERS

Section 550(a)(1) of the Bankruptcy Code provides, in relevant part, that "to the extent that a transfer is avoided under section 544 . . . the trustee may recover, for the benefit of the estate . . . the value of such property, from . . . the initial transferee of such transfer . . . ."[29] "The term 'transferee' is not defined in the Bankruptcy Code, and there is no legislative history to elucidate its meaning," but "courts . . . have uniformly followed the test set forth by the [United States Court of Appeals for the] Seventh Circuit in the *Bonded* case."[30] In *Bonded*, the Seventh Circuit held that "the minimum requirement of status as a 'transferee' is dominion over the

---

[25] *Triangle Trading Co.*, 200 F.3d at 2 (*quoting Morris v. Gov't Dev. Bank of Puerto Rico*, 27 F.3d 746, 748 (1st Cir. 1994)).

[26] *Griggs-Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir. 1990) (*quoting Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990)).

[27] *Nicolo v. Philip Morris, Inc.*, 201 F.3d 29, 33 (1st Cir. 2000).

[28] *Reich v. John Alden Life Ins. Co.*, 126 F.3d 1, 6 (1st Cir. 1997).

[29] 11 U.S.C. § 550(a)(1).

[30] *Richardson v. United States (In re Anton Noll, Inc.)*, 277 B.R. 875, 878 (B.A.P. 1st Cir. 2002) (*citing Bonded Fin. Servs. v. European Am. Bank*, 838 F.2d at 893). *See also Christy v. Alexander & Alexander of New York, Inc. (In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey)*, 130 F.3d 52 (2d Cir. 1997); *Bowers v. Atlanta Motor Speedway (In re Southeast Hotel Prop. Ltd. P'ship.)*, 99 F.3d 151 (4th Cir. 1996); *Schafer v. Las Vegas Hilton Corp. (In re Video Depot, Ltd.)*, 127 F.3d 1195 (9th Cir. 1997); *Rupp v. Markgraf*, 95 F.3d 936 (10th Cir. 1996); *Nordberg v. Arab Banking Corp. (In re Chase & Sanborn Corp.)*, 904 F.2d 588 (11th Cir. 1990).

7

money or other asset, the right to put the money to one's own purposes."[31] As explained by the United States Bankruptcy Appellate Panel for the First Circuit:

> The *Bonded* court reasoned that a "mere conduit" could not be deemed a transferee and that merely having the ability to control funds (as principals of companies often do) does not automatically render the possessor a transferee. [*Bonded*, 838 F.2d] at 893–94. "When A gives a check to B as agent for C, then C is the 'initial transferee'; the agent may be disregarded." *Id.* at 893. "In order to be a transferee of the debtor's funds, one must (1) actually receive the funds, and (2) have full dominion and control over them for one's own account, as opposed to receiving them in trust or as agent for someone else." *Rupp v. Markgraf*, 95 F.3d at 942.
>
> Since the Seventh Circuit's decision in *Bonded*, it has become well settled that transferee status under § 550(a)(1) necessitates the transferee's "dominion and control," and that "dominion and control" refers to legal, as opposed to mere physical possession of the property transferred. *Bowers*, 99 F.3d at 156 ("[T]he dominion and control test set forth in Bonded requires legal dominion and control."); *Security First Nat. Bank v. Brunson (In re Coutee)*, 984 F.2d 138, 141 n. 4 (5th Cir. 1993) ("Dominion and control means legal dominion and control."). Thus, to be held to the standard of the initial transferee, a transferee must have the legal right to use the funds to whatever purpose he or she wishes, be it to invest in "lottery tickets or uranium stocks." *Bonded*, 838 F.2d at 894.[32]

The Trustee argues that MERS had "dominion and control" over the Mortgage because it held legal title. While it is true that MERS was the mortgagee of record, it held that mortgage as a "nominee" of the note holder. Despite the Trustee's assertions to the contrary, this distinction is both significant and dispositive.

Judge Young of the United States District Court for the District of Massachusetts recently conducted a thorough examination of MERS in *Culhane v. Aurora Loan Servs. of Nebraska*.[33] Regarding MERS's status as a "nominee," he observed that:

---

[31] *Bonded Fin. Servs. v. European Am. Bank*, 838 F.2d at 893.

[32] *In re Anton Noll, Inc.*, 277 B.R. at 879.

[33] *Culhane v. Aurora Loan Servs. of Nebraska*, --- F.Supp.2d ---, 2011 WL 5925525 (D. Mass. Nov. 28, 2011).

> By the very terms of the mortgage instrument, MERS holds only bare legal title to each mortgage registered on its system. Consistent with its status as holder of bare legal title to the mortgage, MERS further agrees to act at the direction of the note holder, who retains a beneficial interest in the mortgage. Thus, MERS is hardly a principal; at most, it is an agent.
>
> The term "nominee" in fact connotes a narrow form of agency: a "person designated to act in place of another, usu[ally] in a very limited way." The MERS Rules likewise define "nominee" as a "limited agent," although this appears to be a recent addition. Perhaps even more fitting to describe MERS's role in the mortgage transaction is the second definition of "nominee" given in Black's Law Dictionary: a "party who holds bare legal title for the benefit of others." By holding bare legal title to mortgages for the purpose of recording them in its name, MERS allows for the underlying notes, which carry with them the beneficial interests in the mortgages, to be transferred freely and without clouding title.
>
> As discussed above, the common law of Massachusetts permits the practice of splitting the mortgage from the debt that it secures (at least prior to foreclosure). Such a split results in the mortgagee holding legal title to the mortgage in trust for the note holder, who has an equitable right to obtain an assignment of the mortgage. The mortgagee is thus a mortgagee in a nominal sense only; its rights are limited by its obligation as trustee. This is precisely the same scenario created by the standard MERS mortgage contract, irrespective of its use of the term "nominee" over "trustee." Thus, the law is held to imply a trustee-beneficiary relationship between MERS and the note holder.[34]

With respect to MERS's authority to assign mortgages, Judge Young explained that:

> [W]here a mortgagee holds legal title to the mortgage in trust for the note holder, and where the note holder desires to foreclose, "law or custom" in fact necessitates that, prior to initiating foreclosure proceedings, the mortgagee must assign its interest to the note holder or the note holder's servicing agent. The power to assign the mortgage's legal title to its beneficial owner is arguably the one power that must be bestowed on a mortgagee who holds only legal title. *Because the mortgagee holds the title in trust for the note holder, it may transfer that title only at the note holder's request or by decree of court. In this sense, the mortgagee's power of assignment is more akin to a duty that it owes as trustee.* But, regardless whether it is best termed a power or a duty, equity requires that the holder of bare legal title to a mortgage have the capacity to assign it to the note holder or the note holder's loan servicer, so that a valid foreclosure may be effectuated.[35]

---

[34] *Id.* at *14-15 (citations and footnote omitted).

[35] *Id.* at *16 (citation omitted) (emphasis added).

With Judge Young's observations in mind, I find that MERS was not an initial transferee because it did not have "dominion and control" over the Mortgage. As previously stated, the Seventh Circuit defined "dominion and control" as "the right to put the money [or asset] to one's own purposes."[36] While MERS admittedly holds more than a mere possessory interest in the Mortgage, it lacks the authority to act without direction from the note holder or servicer in light of its nominee status. In this way, MERS is simply a conduit. Therefore, the Defendants are entitled to judgment as a matter of law with respect to Count III.

3. Count IV – Liability for Avoided Transfer Against BNYMellon

Pursuant to 11 U.S.C. § 550(a)(2), the Trustee also "may recover, for the benefit of the estate, . . . the value of such property, from . . . any immediate or mediate transferee . . . ."[37] A Trustee may not, however, recover from such "a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided."[38] In the present case, it is undisputed that BNYMellon took for value.

"Knowledge," as that term is used in 11 U.S.C. § 550(b)(1), does not mean "constructive notice."[39] Nevertheless, if an immediate transferee possesses knowledge of facts that suggest a transfer may be avoidable, and "further inquiry by the transferee would reveal facts sufficient to

---

[36] *Bonded Fin. Servs. v. European Am. Bank*, 838 F.2d at 893.

[37] 11 U.S.C. § 550(a)(2).

[38] 11 U.S.C. § 550(b)(1).

[39] *Smith v. Mixon*, 788 F.2d 229, 232 (4th Cir. 1986).

alert him that the property is recoverable, he cannot sit on his heels."[40]  As further explained by the Seventh Circuit:

> Venerable authority has it that the recipient of a voidable transfer may lack good faith if he possessed enough knowledge of the events to induce a reasonable person to investigate.  No one supposes that "knowledge of voidability" means complete understanding of the facts and receipt of a lawyer's opinion that such a transfer is voidable; some lesser knowledge will do. Some facts strongly suggest the presence of others; a recipient that closes its eyes to the remaining facts may not deny knowledge. But this is not the same as a duty to investigate, to be a monitor for creditors' benefit when nothing known so far suggests that there is a fraudulent conveyance in the chain. "Knowledge" is a stronger term than "notice." A transferee that lacks the information necessary to support an inference of knowledge need not start investigating on his own.[41]

Therefore, the issue before me is whether BNYMellon was aware of facts that would have alerted a reasonable person to the avoidability of the Mortgage.

> At the September 30, 2011, hearing, BNYMellon argued that it had no such knowledge:
>
> [U]nder the law as it was back when this transfer was first made back in 2006 with respect to this assignment, the law as it was, Bank of New York had no reason to know that at some later time a Chapter 7 Trustee could actually avoid the mortgage because of something I believe is a latent effect [sic] in that mortgage, that would not necessarily, under the law as it was, give rise and cause the Bank of New York to make further inquiry.
>
> I believe that they - - at the time, they were reasonable to rely on the fact that this was something presented before an officer, a Notary at the time, and could rely on, at the time, that this was not a defective document, and otherwise, why wouldn't the mortgage be completely void at that time?[42]

This argument is premised on two assertions: (1) that Judge Feeney's decision in *In re Giroux* is an anticipated change in the underlying law; and (2) that the defect in the Acknowledgment was latent.  Both of these assertions are false.

---

[40] *In re Sherman*, 67 F.3d at 1357; *see also In re Bressman*, 327 F.3d at 236.

[41] *Bonded Fin. Servs. v. European Am. Bank*, 838 F.2d at 897-898 (citations omitted).

[42] Trans. Sept. 30, 2011 at 6:7-22.

11

In *In re Mbazira*,[43] Judge Saylor of the United States District Court for the District of Massachusetts rejected the first assertion when brought by a debtor who sought to challenge the validity of her mortgage after confirmation of her Chapter 13 plan. Finding that I did not abuse my discretion by concluding she was judicially estopped from such a challenge, Judge Saylor reasoned:

> The debtor offers no persuasive argument as to how *Giroux* may be considered an unanticipated change in the substantive law governing the case. True, the bankruptcy court was called upon to predict whether the Supreme Judicial Court would consider the omission of a mortgagor's name from the acknowledgment a material defect under Massachusetts law. But in doing so, it was guided by extensive precedent from Massachusetts and other jurisdictions. Had the debtor conducted research and identified the alleged defect in her mortgage prior to confirmation, she too could have raised the arguments made by the *Giroux* debtor under the existing governing statutes and body of controlling case law. Under the circumstances, it was not an abuse of discretion to conclude that *Giroux* did not effect [sic] an unanticipated change in the law sufficient to overcome the clear basis for judicial estoppel.[44]

Accordingly, while *In re Giroux* may have been the first case in this district to hold that the absence of a mortgagor's name from an acknowledgment is a material defect, it was based entirely on existing law.

Turning to the second assertion, the defect in the Acknowledgment clearly was not hidden. To the contrary, it is apparent on its face that the Debtor's name is missing from the Acknowledgment and BNYMellon cannot credibly argue otherwise. Therefore, by raising this argument, BNYMellon implicitly suggests that the defect was undiscoverable prior to *In re Giroux*. This fails for the same reason as the last—*In re Giroux* is not an unanticipated change in the law. In sum, given the patent defect in the Acknowledgement and that "Massachusetts is a

---

[43] *Mbazira v. Litton Loan Serv'g, LLP (In re Mbazira)*, No. 10-11831-FDS, 2011 WL 3208033 (D. Mass. July 27, 2011).

[44] *Id.* at *4.

12

strict formality state,"[45] I find that BNYMellon had knowledge of facts that should have compelled it to investigate the matter further. As such, the Trustee is entitled to summary judgment as to Count IV.

## V. CONCLUSION

In light of the foregoing, I will enter an order granting the Motion with respect to Count IV and denying it with respect to Count III, and granting the Cross-Motion with respect to Count III and denying it with respect to Count IV.

                        William C. Hillman
                        United States Bankruptcy Judge

Dated: January 4, 2012

Counsel Appearing:

    Jeffrey J. Cymrot, Anthony McGuinness, Sasson and Cymrot, LLP, Boston, MA,
        for Warren E. Agin, the Chapter 7 trustee
    Jeana Kim Reinbold, Jenny L. Redden, Ablitt Scofield, P.C., Woburn, MA,
        for the Mortgage Electronic Registration Systems, Inc. and The Bank of New York Mellon

---

[45] *Mortg. Elec. Registration Sys., Inc. v. Agin*, 2009 WL 3834002 at *2.